| | |
|---|---|
| GAIL OSBORN, TIM MCCONNELL SEABA, AND GORDON SEABA, <br><br> Plaintiffs, <br><br> v. <br><br> CHAUNCEY MOULDING, KELSEY KOENIG, AND JEFFERSON COUNTY IOWA, <br><br> Defendants. | Case No. 4:25-cv-183 -SHL-SBJ <br><br><br> **DEFENDANT KELSEY KOENIG'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**COMES NOW** Defendant, Kelsey Koenig, and for her Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, states the following:

1. During the events of this case, Plaintiffs Gordon Seaba, Tim McConnell Seaba, and Gail Osborn all lived on a property located at 3251 110th Street, Brighton, Iowa, which is in Jefferson County. (Pet., ¶ 12; MSJ Appendix ("App.") 119, Osborn Dep., 7:24-25).

2. Gordon Seaba owned the subject property with a life estate, while Tim McConnell Seaba, his sister Ashley, and their deceased brother Aaron, were remaindermen. (MSJ App. 123, Osborn Dep., 24:15-25; MSJ App. 104, McConnell Dep., 49:13-17; MSJ App. 180, Plaintiffs' Responses to Interrogatory No. 17; MSJ App. 153-154, Jefferson County Assessor Records).

3. Gordon Seaba died on March 6, 2026. (MSJ App. 134, Osborn Dep., 66:18-20).

4. Gordon Seaba lived in the main house, while Osborn and McConnell Seaba lived in a small cottage behind the main house. (Pet., ¶ 13; MSJ App. 123, Osborn Dep., 24:13-14).

5. Osborn and McConnell became romantically involved about eight years ago, and Osborn moved into his home. (MSJ App. 095, McConnell Seaba Dep., 16:2-4).

**Background on Plaintiffs**

6.     In the past 10 years, Gail Osborn has been incarcerated in multiple county jails. (MSJ App. 119, Osborn Dep., 8:7-22).

7.     She's been convicted of three class D felonies for theft charges.  (MSJ App. 120, Osborn Dep., 11:13-20).

8.     Osborn has several children, but she does not have custody of any of them.  (MSJ App. 122, Osborn Dep., 19:3-7).

9.     Osbon has also been the subject of numerous investigations by Iowa DHS/HHS ("IHHS") Child Protective Services.  (MSJ App. 121, Osborn Dep., 15:15-20).

10.     She has been investigated for poor living conditions, drug use, being unable to provide food, and having no food in the home for her children.  (MSJ App. 131, Osborn Dep., 55:25-56:10; MSJ App. 213, GO 3.31.21 Assessment, p. 2).

11.     She was last investigated in 2022 by Henry County Child Protective Services, which resulted in her daughter Emelia being removed from her home.  (MSJ App.  121-122, Osborn Dep., 16:12-17:20).

12.     Osborn also has a history of drug use, including use of methamphetamine, cocaine, pills, and marijuana.  (MSJ App. 123, Osborn Dep., 22:14-21).

**Report to IHHS on Morning of November 15, 2024**

13.     On the morning of November 15, 2024, IHHS received an anonymous complaint alleging that Gail Osborn had given birth to a daughter, Charlotte, two months prior and was using methamphetamine.  (Pet., ¶ 14).

14.     IHHS Child Protection Worker Kelsey Koenig was assigned to complete an assessment by her supervisor, David Rippey.  (Pet., ¶ 16; MSJ App. 056, Koenig Dep., 24:17-20).

15. According to her Position Description Questionnaire (PDQ) for Social Worker 3, the majority of Koenig's work duties (65%) involve conducting assessments. (MSJ App. 200, Koenig PDQ, p. 1).

16. For an assessment—as indicated by the "Assessment/Evaluation Activity" section in her PDQ—Koenig is to "evaluate the immediate safety of the child/dependent adult, conduct multiple interviews with subjects and other collateral sources, gather physical and documentary evidence, etc., in order to determine whether the abused occurred…" (MSJ App. 200, Koenig PDQ, p. 1; MSJ App. 193-195, Safety Assessment, Form 470-4132 or 470-4132(S)).

17. Koenig was already out in the field that day, driving between Brighton and Washington, Iowa, when her supervisor requested that she go out to the Seaba property right away. (MSJ App. 052, Koenig Dep., 6:21-7:18).

**First Visit to Seaba Property**

18. Around 10:15 a.m. on November 15th, Koenig arrived at Plaintiffs' property. (Pet., ¶ 17).

19. Koenig first encountered Gordon sitting on his porch and he indicated that he lived in the main house, and Gail and Tim lived in a house at the back of the property. (MSJ App. 054, Koenig Dep., 15:15-25; Koenig Dep., 16:1-3).

20. Soon after, Osborn drove up the driveway to the property and was immediately upset. (MSJ App. 054, Koenig Dep., 16:4-10).

21. Osborn appeared to be frustrated and lifted up her shirt to show Koenig that she was not pregnant. (MSJ App. 055, Koenig Dep., 17:3-14).

22. Osborn made a comment to the effect of, "Do I look like I'm on drugs?", to which Koenig replied that she didn't see any indicators. (MSJ App. 055, Koenig Dep., 17:3-14).

23. Osborn also made a comment to Koenig about having some children with her recently and showed Koenig a car seat in her car, which confused Koenig due to the reported age of the child and that it didn't match the age of the child for the car seat, which was for an older child. (MSJ App. 055, Koenig Dep., 17:15-25).

24. Osborn then invited Koenig to come back and view her and Tim's residence. (MSJ App. 055, Koenig Dep., 17:15-18:3).

25. Once they were done, Osborn went outside and started to feed some pigs. While doing so, Osborn told Koenig that it was Gordon Seaba's property, and that when Gordon dies, it will be her and Tim's property. (MSJ App. 056, Koenig Dep., 23:23-24:9).

26. Osborn then went with Koenig to the main home. (Pet., ¶ 28).

27. Gordon Seaba gave permission to Koenig to inspect his home. (Pet., ¶ 29).

28. Koenig asked her to see the house in its entirety. (MSJ App. 058, Koenig Dep., 31:5-15).

29. But Osborn only permitted Koenig to see the downstairs of the house. (MSJ App. 058, Koenig Dep., 29:23-30:2).

30. Koenig did not observe anything indicating a baby had been present in the home or that Osborn was using illegal substances. (Pet., ¶ 30).

### Events Between First and Second Visit to Seaba Property

31. After the visit, Koenig drove toward her office in Washington, Iowa. (MSJ App. 059, Koenig Dep., 33:8-17).

32. At approximately 11:36 a.m., Koenig spoke with Washington County Sheriff's Office Investigator Jayce Horning. (Pet., ¶ 32; MSJ App. 186 (Gail Osborn ("GO") 12.16.24 Assessment, p. 5).

33. Investigator Horning related to Koenig that he was familiar with Osborn from working with Osborn at the fair, and that he had observed that she did not appear pregnant that summer. (Pet., ¶ 33).

34. Horning told Koenig that Osborn had been recently calling the local police station to inquire about safe haven boxes to drop off newborn babies. (MSJ Appendix 059, Koenig Dep., 34:16-25, 35:23-25; MSJ App. 186, GO 12.16.24 Assessment, p. 5).

35. During their discussion, Horning told Koenig that he was now concerned based on the information she was telling him. (MSJ App. 059, Koenig Dep., 35:24-36:7).

36. But then Horning looked up the property and realized it was located in Jefferson County and told Koenig that this would not be their case. (MSJ App. 061, Koenig Dep., 42:17-24).

37. Around 11:51 a.m., Koenig spoke with Alicia White, who was a local probation officer. (Pet., ¶ 34).

38. White explained that she and Osborn were not friends, but she knew Osborn because she frequented the probation office. (MSJ App. 059, Koenig Dep., 36:8-24).

39. White told Koenig that she had not seen Osborn being pregnant recently. (MSJ App. 060, Koenig Dep., 38:21-39:9).

40. Next, assistant Jefferson County Attorney, Elizabeth Estey, contacted Koenig and told her that Osborn had contacted the county attorney's office a couple of times after Koenig's visit, and the office found this very concerning, and wanted to know what was going on. (MSJ App. 061, Koenig Dep., 44:6-19).

5

41. At 2:26 p.m., Koenig spoke by telephone with Sarah Rosonke, the guardian of Osborn's youngest child. (MSJ App. 064, Koenig Dep., 56:1-16, MSJ App. 187, GO 12.16.24 Assessment, p. 6).

42. Rosonke stated that Osborn hasn't seen her children since December 2023, and that Tim McConnell Seaba has never had a visit with his daughter. (MSJ App. 187, GO 12.16.24 Assessment, p. 6).

43. Eventually, Koenig arrived back at her office and started reviewing old IHHS assessments related to Gail Osborn. (MSJ App. 062, Koenig Dep., 45:18-24).

44. Koenig reviewed one assessment where one of Osborn's children had been found to be positive for methamphetamine when born. (MSJ Appendix 062, Koenig Dep., 45:22-46:2; MSJ App. 205, GO 1.13.20 Assessment, p. 2).

45. In one particular case, Koenig discovered that Osborn did not participate in services offered by IHHS and was supposed to have a safety plan where her child would live with Osborn's sister in a neighboring town. (MSJ Appendix 062, Koenig Dep., 46:3-9; MSJ App. 214-218, GO 3.31.21 Assessment, pp. 3-7).

46. But rather than drop her child off with her sister, Osborn took the child back to the Seaba property, and law enforcement had to go out there and locate the child. (MSJ App. 062, Koenig Dep., 46:3-15; MSJ App. 214-218, GO 3.31.21 Assessment, pp. 3-7).

47. Koenig reviewed another assessment where Osborn had falsely claimed that her and McConnell Seaba's child had epilepsy, and an another one where Osborn had been found living with a different child of hers in a car in Montana, and the child had rotted teeth. (MSJ App. 062, Koenig Dep., 47:1-10; MSJ App. 237-241, GO 10.26.21 Assessment, pp. 2-6; MSJ App. 258-259, GO 9.11.17 Assessment, pp. 5-6).

48.     Based on her review of these assessments, Koenig became concerned about Osborn's credibility, as her actions in past assessments were similar to how she acted with Koenig earlier.  (MSJ App. 062, Koenig Dep., 46:16-24).

49.     Around 3:23 p.m. on November 15th, Koenig spoke with Moulding.  (Pet., ¶ 43).

50.     In Jefferson County, the normal procedure for IHHS is to contact the county attorney's office about a situation like this, rather than a local detective.  (MSJ App. 063, Koenig Dep., 49:21-50:8).

51.     When Koenig spoke with Moulding, she reviewed everything with him, including past Osborn's past history, her concerns, and additional information on the IHHS assessment form for this case.  (MSJ App. 063, Koenig Dep., 49:8-10, 49:21-24; MSJ App. 037, Moulding Dep., 82:6-23; MSJ App. 183, GO 12.16.24 Assessment, p. 2).

52.     In response, Moulding said that they needed to go back out to the Seaba property. (MSJ App. 063, Koenig Dep., 50:16-18).

### Second Visit to Seaba Property

53.     At approximately 4 p.m., the Defendants arrived at Plaintiffs' property. (Pet. ¶ 44).

54.     Koenig and Moulding were joined by Assistant Jefferson County Attorney Elizabeth Estey, Jefferson County Sheriff's Deputy Burnett, Jefferson County Sheriff's Deputy Miller, and two Washington County Sheriff's deputies.  (Pet., ¶ 45).

55.     Deputies from both Jefferson and Washington counties were there because there was some confusion with where this property was located and in which county the plaintiffs resided.  (MSJ App. 002, Miller Dep., 6:16-7:1).

56.     Defendants did not posses a warrant to search any part of Plaintiffs' property.  (Pet., ¶ 46).

57. Moulding did not view the situation as a criminal investigation, but rather as investigation to check on the health and welfare of a reported newborn baby. (MSJ App. 024, Moulding Dep. 30:8-21).

58. Moulding then drove up the driveway and parked his vehicle. (Pet., ¶ 49).

59. Koenig followed Moulding up the driveway and parked her own vehicle. (Pet., ¶ 50).

60. Both sets of sheriffs' deputies and assistant county attorney Estey remained at the bottom of the driveway and parked on the road. (Pet., ¶ 51).

61. Koenig then watched Moulding walk up to the front door of Gordon's house and knock on the door. (MSJ App. 073, Koenig Dep., 91:5-8).

62. Moulding entered Gordon's house at Gordon's invitation. (MSJ App. 033, Moulding Dep., 68:7-11).

63. Eventually, Koenig got out of the truck, walked up to the house, knocked on the door, and asked to come inside. (MSJ App. 073, Koenig Dep., 91:20-92:2).

64. Neither Osborn nor McConnell Seaba were present in the main house when Koenig spoke with Gordon. (MSJ App. 136-137, Osborn Dep., 73:16-74:1; 78:11-15; MSJ App. 097, McConnell Seaba Dep., 24:11-13).

65. Koenig proceeded to tell Seaba that Moulding and the deputies wanted to look around the property for a baby. (MSJ App. 073, Koenig Dep., 92:5-10).

66. Gordon told Koenig to go ahead and agreed to a 10-minute time limit. (MSJ App. 073, Koenig Dep., 92:22-24).

67.     Once Moulding obtained permission for Gordon, he contacted Jefferson County Deputy Mark Miller to inform him of this consent and to begin the search. (MSJ App. 004, Deputy Miller Dep., 15:19-16:9).

68.     Deputy Miller had been out to the Seaba residence for other calls in the past, and had always known the property to belong to Gordon Seaba. (MSJ App. 002, Deputy Miller Dep., 7:7-25; MSJ App. 005, Deputy Miller Dep., 18:3-11).

69.     Moulding began directing the deputies where to look. (MSJ App. 136, Osborn Dep., 75:7-15).

70.     At one point, Moulding entered Osborn and McConnell's small cottage. (MSJ App. 35, Moulding Dep., 73:17-74:1).

71.     He was inside the cottage for approximately 30 seconds. (MSJ App. 129, Osborn Dep., 45:14-18).

72.     Koenig did not go into Osborn and McConnell Seaba's small cottage. (MSJ App. 071, Koenig Dep., 81:5-6; MSJ App. 136, Osborn Dep., 76:2-4).

73.     Nobody told Osborn or McConnell Seaba that they were under criminal investigation for anything. (MSJ App. 137, Osborn Dep., 77:10-13; MSJ App. 104, McConnell Seaba Dep., 49:2-4).

74.     Afterward, Moulding, Koenig, and the deputies walked back to their vehicles, while Osborn continued to tell them to leave, and they eventually left. (MSJ App. 137, Osborn Dep., 78:19-79:1).

75.     As depicted on Deputy Miller's body camera video, from the time the deputies began to search the outbuildings, which culminates with Moulding entering and exiting Gail and

9

Tim's residence, the entire search lasts approximately 7 minutes.  (MSJ App. 263, Deputy Miller

Body Camera Video, Length 14:58).

Respectfully Submitted,

**BRENNA BRID**
Attorney General of Iowa

**/s/ RYAN P. SHEAHAN**
**RYAN P. SHEAHAN**
Assistant Attorney General
Hoover Building, Second Floor
Des Moines, Iowa 50319
PHONE: (515) 281-6658
FAX: (515) 281-4209
E-MAIL: ryan.sheahan@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

*Original filed electronically.*
*Copy electronically served on all parties of record.*

| **PROOF OF SERVICE** |
| --- |
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on May 29, 2026: |
| ☐ U.S. Mail          ☐ FAX<br>☐ Hand Delivery     ☐ Overnight Courier<br>☐ Federal Express    ☐ Other<br>☒ ECF System Participant (Electronic Service) |
| Signature: /s/Jodi R. Watson |