**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **GAIL OSBORN, TIMOTHY MCCONNELL-SEABA, and GORDON SEABA,**<br><br>    **Plaintiffs,**<br><br>vs.<br><br>**CHAUNCEY MOULDING, KELSEY KOENIG, and JEFFERSON COUNTY, IOWA,**<br><br>    **Defendants.** | **Case No. 4:25-cv-183**<br><br><br><br>**RESPONSE TO MOULDING/JEFFERSON COUNTY STATEMENT OF FACTS (ECF No. 32-3)** |

**COME NOW** Plaintiff Gail Osborn and Timothy McConnell-Seaba and for their response to Defendant Moulding and Defendant Jefferson County's statement of undisputed material facts, ECF No. 32-3, state as follows:

1. On November 15, 2024, the Iowa Department of Health and Human Services ("HHS") received an anonymous complaint alleging that Plaintiff Gail Osborn had given birth to a daughter, Charlotte McConnell, two months prior and was using methamphetamine while caring for that child. ECF 1, ¶ 14, App. JEFFERSON COUNTY IOWA ("JCI") 002.

**RESPONSE: Admit.**

2. HHS Child Protective Worker, Defendant Kelsey Koenig, was assigned to complete an assessment. ECF 1, ¶ 16, App. JCI 003.

**RESPONSE: Admit.**

3. On November 15, 2024, Plaintiff Gordon Seaba was the life tenant and property owner of the property on which Plaintiffs Gail Osborn and Timothy

1

McConnell Seaba resided. App. JCI 016; ECF 1, ¶ 13, App. JCI 002.

**RESPONSE: Deny because Timothy McConnell was also a property owner. ECF No. 33-3, Plaintiffs' MSJ Appx at 26. Admit that Gordon held a life tenancy and that Osborn and McConnell resided on the property.**

4.     Around 10:15 am on November 15, 2024, Defendant Koenig traveled to Plaintiff Gordon Seaba's property, on which Plaintiffs Timothy McConnell Seaba and Gail Osborn resided. ECF 1, ¶ 17, App. JCI 003; Osborn Dep. Vol II 20:12-21:22, App. JCI 103-104.

**RESPONSE: Admit.**

5.   Upon arrival, Koenig spoke with Osborn regarding the allegations contained in the anonymous complaint. ECF 1, ¶ 18, App. JCI 003.

**RESPONSE: Admit.**

6.     Osborn denied both being under the influence of any illegal substances and having an infant child. ECF 1, ¶ 19, App. JCI 003.

**RESPONSE: Admit.**

7.     Osborn contacted Timothy McConnell Seaba, who also spoke with Koenig. ECF 1, ¶ 21, App. JCI 003.

**RESPONSE: Admit.**

8.     Timothy McConnell Seaba denied both that Osborn had recently given birth and that either of them had been using illegal substances. ECF 1, ¶ 22, App. JCI 003.

**RESPONSE: Admit.**

9.     Osborn allowed Koenig to inspect the "tiny home" in which she lived, located at the back of the property. ECF 1, ¶ 23, App. JCI 003.

**RESPONSE: Admit.**

10. Koenig observed a little bedroom, a shower, and a gun above the bed. Koenig Dep. 22:19-22, App. JCI 062.

**RESPONSE: Admit.**

11. Osborn also went with Koenig to the main home on the property in which Plaintiff Gordon Seaba then resided. ECF 1, ¶ 28, App. JCI 004.

**RESPONSE: Admit.**

12. Gordon Seaba agreed to allow Koenig to inspect his home. ECF 1, ¶ 29, App. JCI 004.

**RESPONSE: Admit.**

13. Koenig left Gordon Seaba's property after inspecting both the "tiny home" at the back of Gordon Seaba's property, along with Gordon Seaba's home. ECF 1, ¶ 31, App. JCI 004.

**RESPONSE: Admit.**

14. Koenig returned to her office after her morning visit and began reviewing the anonymous complaint alongside Osborn's history of HHS complaints. Koenig Dep. 45:22-47:16, App. JCI 065.

**RESPONSE: Admit.**

15. Around 3:23 pm on November 15, 2024, Koenig spoke to Defendant Chauncey Moulding, and both decided to return to Gordon Seaba's property with law enforcement to ask Gordon Seaba for his consent to search the property to ensure there was not an emergency for the care of an infant child. ECF 1, ¶ 43, App. JCI 005.

**RESPONSE: Deny. Koenig did not want to return to the property and felt they could have waited until another day to re-visit the property. (ECF No. 33-3, Plaintiffs' MSJ**

3

**Appx 267 (Koenig DT 50:18–20), Appx 270 (Koenig DT 53:19–22), Appx 271 (Koenig DT 54:1–12), (Appx 271 (Koenig DT 54:6–8), Appx 303 (Koenig DT 86:14–16)).**

16. At approximately 4:00 pm, Moulding and Koenig arrived at Gordon Seaba's property. ECF 1. ¶ 44, App. JCI 005.

**RESPONSE: Deny. Defendants arrived shortly before 5:00pm. (ECF No. 33-3: Plaintiff MSJ Appx 452).**

17. Moulding and Koenig were accompanied by Assistant Jefferson County Attorney Elizabeth Estey, Jefferson County Sheriff's Deputy Brian Burnett, Jefferson County Sheriff's Deputy Mark Miller, and two Sheriff's Deputies from Washington County, Iowa. ECF 1, ¶ 45, App. JCI 005.

**RESPONSE: Admit.**

18. The Defendants did not possess a warrant to search the property. ECF 1, ¶ 46, App.JCI 005.

**RESPONSE: Admit**

19. Upon arriving, Moulding proceeded up the driveway of the property to Gordon Seaba's house. ECF 1, ¶ 49, App. JCI 006.

**RESPONSE: Admit.**

20. Estey and the deputies from Jefferson and Washington Counties remained parked on the road next to the bottom of the driveway. ECF 1, ¶ 51, App. JCI 006.

**RESPONSE: Admit.**

21. Osborn has no direct personal knowledge of the events directly

4

preceding Moulding's entry into Gordon Seaba's house, with regard to who opened the door to the residence. Osborn Dep. 42:10-16, App. JCI 050.

**RESPONSE: Deny. Osborn observe Moulding go up and open the screen door and main door without stopping. Moulding did not knock. (Plaintiffs MSJ Appx 513 (Moulding DT 57:7–11)). Moulding opened the door and went in without invitation, and remained after being told to leave. (Plaintiffs MSJ Appx 70–71 (Osborn DT 42:10–43:24)).**

22.    Osborn was not present in Gordon Seaba's house with Gordon Seaba, Koenig, and Moulding when Koenig and Moulding asked for and received consent from Gordon Seaba to search his house, the surrounding property, and the outbuildings. Osborn Dep. 78:11-18, App. JCI 057.

**RESPONSE: Admit.**

23.    Osborn has no direct personal knowledge of the contents of the conversation granting consent between Moulding, Koenig, and Gordon Seaba. Osborn Dep. 78:11-18, App. JCI 057.

**RESPONSE: Admit.**

24.    Moulding and Koenig inspected Gordon Seaba's house for the emergency aid of an infant child. ECF 1, ¶ 58, App. JCI 006.

**RESPONSE: Admit that Moulding and Koenig inspected Gordon's house. Deny they were doing so for emergency aid of an infant child. The citation does not support that assertion.**

25.     During this time, Timothy McConnell Seaba spoke to law

enforcement officers at the bottom of the driveway. ECF 1, ¶ 59, App. JCI 006.

**RESPONSE: Admit.**

26.     Moulding telephoned Deputy Miller and informed him of the consent

granted by Gordon Seaba for the search of his property. ECF 1, ¶ 61, App. JCI

007.

**RESPONSE: Admit.**

27.     Based on the consent granted by Gordon Seaba, law enforcement
        from  both counties entered Gordon Seaba's property. ECF 1, ¶ 62,
        App. JCI 007.
**RESPONSE: Admit, to the extent that the citation explains law enforcement was
relying on consent granted by Gordon Seaba, as communicated to the officers
by Moulding.**

28.     Both Osborn and Timothy McConnell Seaba expressly granted

permission for law enforcement to enter and remain on the property. Pl. Osborn

Ans. Ints. at 8, App. JCI 022; Pl. McConnell Seaba Ans. Ints. at 8, App. JCI 015.

**RESPONSE: Admit, but note that Osborn and McConnell-Seaba did not give
consent to the officers to search.**

29.     Defendants conducted a search of the outbuildings and camper vehicles
        present on Gordon Seaba's property. ECF 1, ¶ 63, App. JCI 007.
**RESPONSE: Admit.**

30.     Moulding and Koenig participated in the search of Gordon Seaba's
        property. *Id.*
**RESPONSE: Admit.**

31.     Moulding approached an outbuilding at the rear of the property in

which Osborn and Timothy McConnell Seaba lived and call their "tiny home."

ECF 1, ¶ 65, App. JCI 007.

**RESPONSE: Admit.**

32.     This outbuilding is recognized and assessed as a "Shed" by the Jefferson County Assessor. App. JCI 016-018.

**RESPONSE: Admit.**

33.     Osborn told Moulding that he did not have permission to enter the

shed without a warrant. ECF 1, ¶ 66, App. JCI 007.

**RESPONSE: Admit.**

34.     Moulding proceeded to enter the shed. ECF 1, ¶ 68, App. JCI 007.

**RESPONSE: Admit.**

35.     Moulding stepped into the shed, briefly scanned its contents, and walked out. Moulding Dep. 84:18-25, App. JCI 088.

**RESPONSE: Admit.**

36.     Moulding was only inside of the "tiny home"/shed for seconds. Osborn Dep. Vol. II 29:8-10, App. JCI 104.

**RESPONSE: Admit.**

37.     Defendants found no evidence indicating an infant child resided on the property. ECF 1, ¶ 74, App. JCI 008.

**RESPONSE: Admit.**

38.     All involved proceeded to the driveway of Gordon Seaba's property. Osborn Dep. 78:19-79:1, App. JCI 057.

**RESPONSE: Admit.**

7

39.     Osborn and Timothy McConnell Seaba told Defendants to leave the property when they were all on the driveway, but continued to engage all involved in conversation. Osborn Dep. 79:2-9, App. JCI 057.

**RESPONSE: Deny. The citation does not support this statement. Deny to the extent this suggests that Osborn and McConnell-Seaba implicitly invited Defendants to remain and talk. Admit some conversation continued after Defendants were told to leave, because Defendants did not leave. The video speaks for itself.**

**PARRISH KRUIDENIER, L.L.P.**

By: __/s/ Gina Messamer_____
Gina Messamer             AT0011823
2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 284-5737
Facsimile: (515) 284-1704
Email: gmessamer@parrishlaw.com
**ATTORNEY FOR PLAINTIFFS**

By: __/s/ Edward Harvey_____
Edward G. Harvey          AT0003350
1600 Wonder Way
Fairfield IA, 52556
Telephone: (641) 919-8696
Email: edwardgharvey98@yahoo.com
**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 7, 2026, I electronically filed the foregoing with the Clerk of Court using the ECF system and a true copy of the foregoing was served electronically on the attorneys of record.

By: __/s/ Gina Messamer_____