UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GAIL OSBORN, TIM MCCONNELL SEABA, AND GORDON SEABA, <br><br> Plaintiffs, <br><br> v. <br><br> CHAUNCEY MOULDING, KELSEY KOENIG, AND JEFFERSON COUNTY IOWA, <br><br> Defendants. | Case No. 4:25-cv-183 -SHL-SBJ <br><br><br> **DEFENDANT KELSEY KOENIG'S RESISTANCE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY** |

**COMES NOW** Defendant, Kelsey Koenig, and for her Resistance to Plaintiffs' Motion

for Summary Judgment on Liability, states the following:

**TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………………....…2

FACTUAL BACKGROUND……………………………………………………………..2

SUMMARY JUDGMENT STANDARD..………..……………………………….…… 2

ARGUMENT…………………………………………………………………………… 3
    I. Defendant Koenig Did Not Violate Plaintiffs' Fourth Amendment Rights..………........3
        A. Osborn and McConnell Seaba could not have reasonable expectations of
           privacy in the main house or in the outer buildings where they did not live………4
        B. Defendants obtained consent to search from Gordon Seaba, who at the very
           least had apparent, if not actual, authority over the subject property………………7
        C. Exigent circumstances applied to this situation…………………………………..10
        D. The community caretaking exception also applied………………………………11
    II. Defendant Koenig is Entitled to Qualified Immunity…………………………………12
        A. The Iowa Dept. of Health & Human Services is required to conduct
           child abuse investigations………………………………………………..………13
        B. It was not clearly established at the time of the search that Defendant
           Koenig knew she would be violating the law when she had the property
           owner's consent to search the property over the remainderman's objection……...15

CONCLUSION………………………………………………………………………..…18

1

**INTRODUCTION**

In Plaintiffs' 39-page motion for summary judgment on liability, they claim Defendants, Jefferson County Attorney Chauncey Moulding, Jefferson County, and Iowa Health and Human Services ("IIHHS") employee Kelsey Koening, needed a search warrant to search the subject property located in Jefferson County, Iowa, and that no exceptions to the warrant requirement applied. Plaintiffs also contend that Gordon Seaba's consent did not override or invalidate Gail Osborn's and Tim McConnell Seaba's objections to Defendants' search.

Because there are no genuine issues of material fact in dispute with regard to Plaintiffs' § 1983 claim against Defendant Koenig, and because she is entitled to qualified immunity, this Court should deny Plaintiffs' motion for summary judgment for liability and grant summary judgment in favor of Defendant Koenig.

**FACTUAL BACKGROUND**

For the complete factual record, Defendant Koenig refers the Court to Koenig's Summary of Facts in her Memorandum in Support of Summary Judgment (ECF 29-1, pp. 2-6), Koenig's Statement of Undisputed Material Facts (ECF 29-2), Koenig's responses to Plaintiffs' Statement of Undisputed Material Facts for Plaintiffs' Motion for Summary Judgment, and Koenig's Separate Statement of Additional Material Facts in Support of Resistance.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *United States v. Story Cnty.*, 28 F. Supp. 3d 861, 867 (S.D. Iowa 2014). Once the motion is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and "by affidavit or otherwise" designate "specific facts showing that there

is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt,* 967 F.2d 270, 217 (8th Cir. 1992). In designating specific facts, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary" because Rule 56(c) requires "that there be no *genuine* issue of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) (emphasis in original)).

While the Federal Rules of Civil Procedure give "[d]ue deference" to the "rights of litigants to have their claims adjudicated by the appropriate finder of fact . . . equal deference must be given under Rule 56 to the rights of those defending against such claims to have a just, speedy, and inexpensive determination of the action where the claims have no factual basis." *Anderson v. Indus. Elec. Reels, Inc.*, 812 F. Supp. 999, 1002 (D. Neb. 1993). Consequently, summary judgment is appropriate where resolution of a question of law is controlling. *See Ferezy v. Wells Fargo Bank, N.A.*, 755 F. Supp. 1010, 1013 (S.D. Iowa 2010).

## ARGUMENT

### I. Defendant Koenig Did Not Violate Plaintiffs' Fourth Amendment Rights.

Under 42 U.S.C. § 1983, a plaintiff may have cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Id.* To bring a claim under § 1983, plaintiff must allege a "violation of a right secured by the Constitution and laws of the United States." *See, West v. Atkins,* 487 U.S. 42, 48 (1988). In this case, Plaintiffs allege a § 1983 claim against Defendant Moulding and Defendant Koenig, in their individual capacities, for a violation of their Fourth Amendment right to be free from unreasonable searches. (ECF 1, ¶¶ 76-83).

The Fourth Amendment to the United States Constitution secures "the persons, houses, papers and effects of the people against unreasonable searches and seizures by the government,

3

and requires a showing of probable cause prior to the issuance of warrant." *U.S. v. Martin,* 806 F.2d 204, 206 (8th Cir. 1986); *See also* U.S. Const. Amend. IV. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist.,* 407 U.S. 297, 313 (1972).

Although the warrant procedure is the preferred method by which law enforcement officers perform searches and seizures, the overriding principle of the Fourth Amendment is reasonableness. *Martin,* 806 F.2d at 206. And because the ultimate Fourth Amendment touchstone is "reasonableness," the warrant requirement is subject to certain exceptions. *Riley v. California,* 573 U.S. 373 (2014); *Luer v. Clinton,* 987 F.3d 1160, 1165 (8th Cir. 2021).

Consent is one such exception. *U.S. v. Golinveaux,* 611 F.3d 956, 959 (8th Cir. 2010). A second exception is "exigent circumstances." *Carpenter v. Gage,* 686 F.3d 644, 648 (8th Cir. 2012). A third is the "community caretaker" exception. *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973). However, the community caretaking exception no longer applies to warrantless searches and seizures in a home. *Caniglia v. Strom,* 593 U.S. 194, 196 (2021).

### A. Osborn and McConnell Seaba could not have reasonable expectations of privacy in the main house or in the outer buildings where they did not live.

One of Plaintiffs' contentions is that McConnell Seaba and Osborn were co-tenants with Gordon Seaba, and because of this, Gordon's consent to search the property could not legally trump their objections to the search. However, Gordon Seaba, Tim McConnell Seaba, and Gail Osborn did not have equal property interests in the subject property, nor did they reside in the same residence.

When a party alleges a violation of a constitutionally-protected expectation of privacy, a two-step inquiry is conducted in which the party must show that: (1) he has a reasonable expectation of privacy in the areas searched or the items seized; and (2) society is prepared to

4

accept the expectation of privacy as objectively reasonable. *U.S. v. James,* 534 F.3d 868, 872-73 (8th Cir. 2008). Although the case before the Court is clearly not a criminal matter, the "reasonable expectation of privacy" analysis is useful to address the factual circumstances.

In *U.S. v. Skoda,* 705 F.3d 834 (8th Cir. 2013), the Eighth Circuit found that a son had no expectation of privacy in a property owned by his father. *Id.* at 837.  In that case, a deputy was patrolling an area near a strip mall and a commercial storage business near a home. *Id.* at 836.  In the area around the home, which the deputy believed was vacant, the deputy recognized van belonging to Steve Bargen, on a gravel drive leading down a hill to an open shed. *Id.* at 837. The deputy had previously seen Bargen running power into one of the storage units, and Bargen refused to let the deputy check the serial numbers on the power equipment. *Id.* The deputy approached Bargen's van and noticed a Chevy Trailblazer beyond it. *Id.*  Bargen got out of the van and acted like he had been sleeping. *Id.* Barden said Mark Skoda had called hm about car trouble but had since walked off.  *Id.* The deputy saw items associated with meth production near the cars and called for backup.  *Id.* The police called Skoda's father, who gave permission to search the property. *Id.* Officers searched both vehicles and found items associated with meth production; and the son, Skoda, was prosecuted for conspiring to manufacture methamphetamine. *Id.*

Skoda later moved to suppress the evidence found in Chevy Trailblazer, but the court denied motion. The Eighth Circuit affirmed the district court's ruling finding that Skoda had "no legitimate expectation of privacy in the property, because he had no ownership or possessory interest." *Skoda,* 705 F.3d at 837.  The Court noted defendants do not have an expectation of privacy in a parent's home when they do not live there. *Id.; see also, United States v. Beasley,* 688 F.3d 523, 531 (8th Cir. 2012) (defendant had no expectation of privacy in mother's home, where he did not live).

With respect to searches under the Fourth Amendment, officers are not required always to be correct, just reasonable under the circumstances. *United States v. Rodriguez,* 497 U.S. 177, 185-86 (1990). Even a mistake of fact, that is objectively reasonable, does not violate the Fourth Amendment. *McKenney v. Harrison,* 653 F.3d 354, 358 (8th Cir. 2011). In determining what is reasonable, a court is to apply an objective standard, looking at whether "the facts available to the officer at the moment…warrant a man of reasonable caution in the belief" that the search was permissible. *Rodriguez,* 497 U.S. at 188.

Here, Gordon Seaba owned the subject property with a life estate, while Tim McConnell Seaba, his sister Ashley, and their deceased brother Aaron, were remaindermen.  (Def. Koenig's MSJ App. 123, Osborn Dep., 24:15-25; Def. Koenig's MSJ App. 104, McConnell Dep., 49:13-17; Def. Koenig's MSJ App. 180, Plaintiffs' Responses to Interrogatory No. 17; Def. Koenig's MSJ App. 153-154, Jefferson County Assessor Records).

This distinction between Seaba possessing a "life estate" and McConnell Seaba being a "remainderman" is an important consideration.  In Iowa, a remainder's interest "is a *future* interest created in someone other than the transferor that, according to the terms of its creation, will become a present estate (if ever) immediately upon, and no sooner than, the expiration of all prior particular estates created simultaneously with it." *In re Will of Uchtorff,* 693 N.W.2d 790, 793 (Iowa 2005) (emphasis added.). Therefore, based on Iowa law, McConnell's remainderman interest wouldn't convert to a present life estate until the death of his father, Gordon, who was alive and well on the date of the incident.

Plaintiffs also clearly identified to Moulding  and Koenig which residences were theirs. In fact, when Moulding and Koenig obtained consent from Gordon on the second visit to the property, he specifically told them that they could search the property *except* for the small cottage. (*See,* Def.

Koenig's responses to Pl's SUMF ¶¶ 126, 127 and 199). So the only arguable expectation of privacy that McConnell Seaba and Osbon had, independent of Gordon Seaba, was in the small cottage where they resided behind the main house. But the cottage was never searched by Defendant Koenig, only Defendant Moulding.

**B. Defendants obtained consent to search from Gordon Seaba, who at the very least had apparent, if not actual, authority over the subject property.**

The Eighth Circuit summarized the applicable law on consent and apparent authority in

*United States v. Williams*:

> Consent is an exception to the warrant requirement, which may be given by a third party with common authority or apparent authority over the premises or effects. The government bears the burden of proving by a preponderance of the evidence that the co-occupant had sufficient authority to provide consent. A warrantless search is justified when officers reasonably rely on apparent authority of the third party, even if she lacked common authority. For apparent authority, we examine whether "the facts available to the officer at the time" of consent would lead a person of reasonable caution to believe the consenter had authority over the item searched. Common authority is determined from joint access, mutual use, and control, and its existence is a question of fact.

*Id.,* 36 F.4th 792, 795-796 (8th Cir. 2022), *petition for reh'g and reh'g en banc denied*

In deciding whether a party had authority to give consent to search, the officer "must reasonably believe that, given the totality of the circumstances, the third party possesses authority to consent." *United States v. Weston,* 443 F.3d 661, 668 (8th Cir. 2006) (citing *Illinois v. Rodriguez,* 497 U.S. 177, 186 (1990). "The critical facts…are not the actual relationship between the consenter and the owner, but how that relationship appears to the officer who asked for consent." *United States v. Pennington,* 287 F.3d 739, 746-47 (8th Cir. 2002).

Even in situations where a third party lacks actual authority to consent to a search or seizure of shared property or the premises, the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent, because the Fourth Amendment's

reasonableness requirement demands of government agents not that they always be correct, but that they always be reasonable. *U.S. v. Clutter,* 674 F.3d 980, 983 (8th Cir. 2012).

In this present case, the following facts were known to the Defendants at the time of their search:

(1) During IHHS worker Koenig's first visit to the Seaba property earlier in the day, Gordon Seaba told her that he lived in the main house, and that Tim and Gail lived in a small house at the back of the property. (Def. Koenig's MSJ App. 054, Koenig Dep., 15:15-25; Koenig Dep., 16:1-3).

(2) Also during this first visit, when Osborn pulled up to the house in her vehicle and saw Koenig speaking with Gordon, Osborn invited Koenig to come to the back of the property and view her and Tim's residence.  (Def. Koenig's MSJ App. 055, Koenig Dep., 17:15-18:3).

(3) When Osborn and Koenig went back to the small cottage, Osborn called McConnell Seaba on her cell phone. During this call, Osborn advised McConnell Seaba, in front of Koenig, that his father Gordon had given Koenig permission to go into the main house, and they gave her permission to go into their small cottage.  (Def. Koenig's MSJ App. 126, Osborn Dep., 34:20-35:8).

(4) Once Koenig looked inside the small cottage, Osborn went outside and started to feed some pigs. While doing so, Osborn told Koenig that it was Gordon Seaba's property, and that when Gordon dies, it will be her and Tim's property.  (Def. Koenig's MSJ App. 056, Koenig Dep., 23:23-24:9).

(5) Osborn and Koenig then went back to the main home, where Gordon Seaba personally gave permission to Koenig to inspect his home. (ECF 1, Pet., ¶ 29).

(6)  Prior to the second visit to the Seaba property that day, County Attorney Moulding reviewed the Jefferson County Assessor's web site, the Beacon, which indicated that Gordon Seaba was the owner of the subject property with a life estate.  (Def. Koenig's MSJ App. 028, Moulding Dep., 45:4-46:9; Def. Koenig's MSJ App. 153-154).

(7) The Jefferson County Assessor's web site listed the deed holder of the subject property as "SEABA, GORDON LIFE EST."  It listed the residential building information as a "Single-Family/Owner-Occupied" residence, and as a 1-story frame house built in 1917. There were no other dwellings or residential structures listed—such as the small cottage—outside of Gordon Seaba's house.  (Def. Koenig's MSJ App. 153-154).

(7)  During the second visit, Koenig told Seaba that Moulding and the deputies wanted to look around the property for a baby. (Def. Koenig's MSJ App. 073, Koenig Dep., 92:5-10). Gordon did not deny it was his property but instead told Koenig to go ahead and agreed to a 10-minute time limit.  (Def. Koenig's MSJ  App. 073, Koenig Dep., 92:22-24).

(8)  Furthermore, one of the deputies on the scene, Jefferson County Deputy Miller, had been out to the Seaba residence for other calls in the past, and had always known the property to belong to Gordon Seaba. (Def. Koenig's MSJ  App. 002, Deputy Miller Dep., 7:7-25; Def. Koenig's MSJ  App. 005, Deputy Miller Dep., 18:3-11).

Based on the totality of the circumstances, it was reasonable for Moulding, Koenig, and the law enforcement officers to believe they had obtained valid consent from property owner Gordon Seaba, and at the very least apparent authority—if not actual authority—to conduct a limited search around the property and within the 10-minute time frame provided. *See, Pennigton,* 287 F.3d at 746-47 ("The critical facts…are not the actual relationship between the consenter and the owner, but how that relationship appears to the officer who asked for consent.")

### C. Exigent circumstances applied to this situation.

The "exigent circumstances" exception to the warrant requirement permits a warrantless entry when the needs of law enforcement are so compelling that a warrantless search is objectively reasonable. *Mincey v. Arizona,* 437 U.S. 385, 393-394 (1978). The need to assist persons who are seriously injured or threatened with such injury can justify the warrantless entry or search if officers have an objectively reasonable basis for believing that a person within the house is in need of immediate aid. *United States v. Quarterman,* 877 F.3d 794, 798 (8th Cir. 2017).

In this case, Koenig only had some initial, limited information prior to visiting the Seaba property that morning, as she had been called by her supervisor while she was driving out in the field and told to immediately go to the residence. (Def Koenig's MSJ SOF ¶ 14). Her concerns began to mount throughout the day, first with her observations of Osborn's aggressive and erratic behavior during the morning visit (Def. Koenig's MSJ SOF ¶¶ 21-22), and Osborn's statements about recently being with children. (Def. Koenig's MSJ SOF ¶ 23). Then with Osborn's limiting of Koenig's inspection to the downstairs of the main house. (Def. Koenig's MSJ SOF ¶ 29).

Koenig subsequently uncovered additional concerning information throughout the afternoon, including reviewing past assessments where Osborn exhibited similar behavior in similar circumstances and lacked credibility. (Def. Koenig's MSJ SOF ¶¶ 43-48). It was thus appropriate and reasonable for Koenig to share this information with the Jefferson County Attorney's Office, particularly given the fact that Moulding's office handled these types of investigations in Jefferson County. (Def Koenig's MSJ SOF ¶¶ 49, 51). Given all that was discovered within a span of a few hours, it was reasonable for Defendants to conclude that an emergency existed, particularly given the report of an alleged two-month-old newborn baby who

had not been found yet, and who obviously could not care for herself.  Defendants' actions were reasonable under the circumstances.

### D.  The community caretaking exception also applied.

The Eighth Circuit has found the "community caretaker" exception to apply to warrantless searches. For example, in *United States v. Halter,* 988 F.3d 1042 (8th Cir. 2021), the Court found the "community caretaking" exception justified a stop of a defendant's vehicle to check on the welfare of a child. *Id.* at 1047. In that case, law enforcement officers had received a report that a little girl's mother had heard her daughter screaming and crying during a phone call with the girl's father. The mother also reported that the father had a firearm and threatened to kill anyone else who tried to come get the child.  *Id.* Officers were reasonably concerned about the girl's well-being and, since Halter left his house before they could respond, the officers were justified in stopping Halter's vehicle in order to check on the welfare of the child. *Id.*

Although this exception to the warrant requirement no longer applies to warrantless searches and seizures in the home per *Caniglia v. Strom,* 593 U.S. 194, 196 (2021), law enforcement officers may still enter private property without a warrant when certain exigent circumstances exist, including the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Caniglia* at 198.

Although the ruling in *Caniglia* has to some degree limited this exception, it does not bar Koenig from asserting it in the present case. The exception should still apply to the search of other areas of the Seaba property, including the outbuildings, burn pit, and abandoned RVs.  But again, as it relates to the search of Osborn and McConnell Seaba's residence, Koenig never entered their home.

11

**II. Defendant Koenig is Entitled to Qualified Immunity.**

Qualified immunity is immunity from suit rather than mere defense to liability. *Pearson v. Callahan,* 555 U.S. 223, 237 (2009). It protects public officials from § 1983 damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Stanley v. Hutchinson,* 12 F.4th 834, 838 (8th Cir. 2021).

The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson¸* 555 U.S. at 231; *See also, Groh v. Ramirez,* 540 U.S. 551, 567 (2004). To determine whether a defendant is entitled to qualified immunity, the Court considers (1) whether the official's conduct violated a constitutional right; and (2) whether the violated right was clearly established. *Stanley,* 12 F.4th at 838.

Whether the facts alleged support a claim for a violation of any clearly established statutory or constitutional right at the time an action occurs is a legal question for the court to determine. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Brown v. City of Golden Valley,* 574 F.3d 491, 499 (8th Cir. 2009). Proving a constitutional right was clearly established at the time a government official acted unlawfully is a high burden for the plaintiffs to meet—"[t]here must be 'precedent,' 'controlling authority,' or a 'robust consensus of cases of persuasive authority.'" *Quiraishi v. St. Charles Cnty.,* 986 F.3d 831, 835 (8th Cir. 2021) (quoting *Dist. Of Columbia v. Wesby,* 583 U.S. 48, 63 (2018)).

As discussed in the preceding section of this resistance, Defendant Koenig did not violate Plaintiffs' constitutional rights. Therefore, the Court's analysis can end there. However, to the extent the second prong of qualified immunity must be analyzed, the Court should find that the

alleged violated right was not clearly established at the time based on these specific and unique circumstances.

### A. The Iowa Dept. of Health & Human Services is required to conduct child abuse investigations.

Iowa Code section 232.71B defines the duties of IHHS as it relates to reports of child abuse. Upon acceptance of a report of child abuse, IHHS shall commence a child abuse assessment when the report alleges child abuse and also alleges imminent danger, death, or injury to a child. Iowa Code § 232.71B(1)(a)(1). In situations where there are no allegations of imminent danger, death, or injury to a child, IHHS will commence a family assessment. Iowa Code § 232.71B(1)(a)(2). The "primary purpose of either the child abuse assessment or the family assessment shall be the protection the child named in the report. The secondary purpose of either type of assessment shall be to engage the child's family in services to enhance the family's strengths and to address needs." Iowa Code § 232.71B(1)(b).

IHHS is required to develop protocols to prioritize the actions taken in response to a child abuse assessments and shall work jointly with child protection assessment teams and law enforcement agencies. Iowa Code § 232.71B(3)(a). The county attorney and appropriate law enforcement agencies may also take other lawful actions which may be necessary or advisable for the protection of the child. Id.

Furthermore, if a report is determined not to constitute a child abuse allegation or if the child abuse report is not accepted but assessed under the family assessment, but a criminal act harming a child is alleged, the department shall immediately refer the matter to the appropriate law enforcement agency. Iowa Code § 232.71B(3)(b). If a child abuse allegation is referred to law enforcement and the child's parent, legal guardian, or legal custodian does not give permission to enter the child's home, to interview the child, or to observe the child, the court of district court

13

upon a showing of probable cause may authorize entry into the child's home, an interview with the child, or observation of the child.  Id.

The IIHHS assessment process includes the following:

- A safety assessment and risk assessment.

- An evaluation of the home environment.

- Identification of the nature, extent, and cause of injuries, to the child named in the report.

- Identification of the person or persons responsible for the abuse.

- A description of the name, age, and condition of other children in the home.

- An interview of the person alleged to have committed the child abuse, if the person's identity and location are known.

Iowa Code § 232.71B(4)(a)-(b).

Upon the completion of the child abuse assessment or the family assessment, IHHS shall make a written report of the assessment.  The written assessment shall require: (1) an incorporation of the information required by Iowa Code § 232.71B(4)(a); (2) a completion of the report within 20 business days of receipt of the child abuse report (or 10 days for completion of the written family assessment); (3) identification of the strengths and needs of the child, and of the child's parent, home, and family; (4) identification of the services available from IHHS and informal and formal services and other support available in the community, and (5) upon completion of the assessment, IHHS shall consult with the child's family in offering services to the child and the child's family to address the strengths and needs identified in the assessment. Iowa Code § 232.71B(13)(a)(1)-(5).

When Defendant Moulding and Defendant Koenig sought Gordon Seaba's consent, as the property owner, they were doing what was required of them under Iowa law for a child abuse investigation. This is why Assistant Jefferson County Attorney Elizabeth Estey testified that if they were unable to obtain consent from Seaba, then the next step would have been to seek a motion to compel from the district court. *See,* Def. Koenig's response to Pls' SUMF, ¶ 83; *See also,* Iowa Code § 232.71B(3)(b) (If child's parent, legal guardian, or legal custodian does not give permission to enter the child's home, to interview the child, or to observe the child, the court of district court upon a showing of probable cause may authorize entry into the child's home.)

Furthermore, Defendant Koenig also did what she was required to do in terms of completing a child abuse assessment and drafting a report within 20 days of receipt of the initial report. Iowa Code § 232.71B(13)(a)(1)-(5). And Osborn and McConnell Seaba were ultimately cleared of alleged potential wrongdoing, after Defendants were permitted to search the property. (Pl's MSJ Conf App 9). Plaintiffs may be upset that they were visited twice on the same day by Defendant Koenig, but it is not a violation of the law for an HHS worker to visit the same property twice in one day when conducting an assessment. Moreover, the HHS assessment process worked as intended in this situation.

**B. It was not clearly established at the time of the search that Defendant Koenig knew she would be violating the law when she had the property owner's consent to search the property over the remainderman's objection.**

Government officials conducting a search are entitled to qualified immunity where clearly established law does not show that a search violated the Fourth Amendment. *Pearson,* 555 U.S. at 243-244. The "clearly established" prong also requires that the legal principle clearly prohibit they officer's conduct in the particular circumstances before him. *Wesby,* 583 U.S. at 63. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Id.* To avoid summary judgment based on qualified immunity, plaintiff must offer sufficient evidence to show a genuine issue of material fact about whether a reasonable officer would have been on notice that the officer's (or IHHS worker's) conduct violated a clearly established right. *Wright v. U.S,* 813 F.3d 689, 695 (8th Cir. 2015).

In cases involving children, child protection and family integrity issues often require government officials to weigh conflicting and competing interests in situations where immediate protective action may be necessary. Thus, the defense of qualified immunity to § 1983 claims "is properly difficult to overcome." *Stanley,* 12 F.4th at 845. It requires more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy in an action under § 1983 to defeat qualified immunity by a defendant otherwise entitled to that defense. *Stanley* at 841-842.

In fact, the Iowa Supreme Court has applied qualified immunity to IDHS and IIHHS workers for § 1983 claims. In *Minor v. State,* 819 N.W.2d 383 (Iowa 2012), the Court held that a social worker is entitled to qualified immunity for his or her investigatory acts. *Id.* at 389. In this case, there is no genuine issue of material fact in dispute that Defendant Koenig was investigating an anonymous report of child abuse and conducting an assessment. Thus, she should be afforded qualified immunity like in *Minor.*

A plaintiff can show that the law is "clearly established" for qualified immunity purposes in three ways: (1) plaintiff may identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation, (2) plaintiff may point to robust consensus of cases of persuasive authority establishing that facts of plaintiff's case make out a violation of a clearly established right, or (3) in rare instances, that a general constitutional rule applies with obvious

16

clarity to facts at issue, which carries the day for plaintiff. *Hovick v. Patterson,* 37 F.4th 511, 517 (8th Cir. 2022).

Plaintiffs are unable to show that the law was clearly established at the time of this incident and that Koenig knew she was in violation of the law when she walked the grounds of the Seaba property on November 15, 2024, with permission from Gordon Seaba but over the objection of remainderman Tim McConnell Seaba and Gail Osborn. Defendant Koenig has been unable to find any Eighth Circuit cases with sufficiently similar facts, nor a robust consensus of cases constituting persuasive authority. In addition, there is no obvious clarity to the facts at issue in this situation, such that Defendant Koenig would have known she was in violation of the law. And at least one federal circuit has held that social workers do not violate clearly established law by exceeding the limited consent to search that the property owner gives them. *See, Brent v. Wayne County Dept. of Human Services,* 901 F.3d 656, 686 (6th Cir. 2018).

Even if McConnell Seaba or Osborn objected to Koenig's presence and told her to "get a warrant," the law was not clearly established at the time such that this would nullify or revoke the consent which Seaba had already provided, or alert Koenig to the fact that she wasn't allowed on the property, or alert another reasonable IHHS worker that his or her conduct was unlawful in the present case. *See, Hovick,* 37 F.4th at 518.

As previously stated, a remainderman's interest is *a future interest* that will only become a present estate upon the expiration of all prior estates created simultaneously with it. *See In re Will of Uchtorff,* 693 N.W.2d at 793. Furthermore, "it is undoubtedly a correct proposition that the remainderman, whether vested or contingent, cannot maintain an action for ejectment, or other action of possessory nature, before the termination of a life estate upon which such remainder depends." *Ward v. Meredith,* 173 N.W. 246, 249 (Iowa 1919). In other words, with a yet-to-be

vested property interest, a remainderman is limited in what he can do with the property, such as overruling or revoking the owner's consent to search.

The only area where Seaba's consent could be limited was the small cottage where McConnell Seaba and Osborn resided. However, that would not nullify or revoke the consent the Defendants obtained for searching the other parts of the property.  Thus, it is certainly not "beyond debate" that the Defendants were in violation of the law, or knew they were in violation of the law, or that Plaintiffs' constitutional rights were being violated when they set about searching the property's outbuildings and abandoned vehicles with the permission of Seaba.  *Luer,* 987 F.3d. at 1165.  Koenig also stood by while law enforcement officers conducted this limited search and did not actively participate. As such, qualified immunity applies here and Koenig's motion should be granted.

**CONCLUSION**

**WHEREFORE**, Defendant Kelsey Koening respectfully requests the Court to deny Plaintiffs' motion for summary judgment on liability and grant Koenig's motion for summary judgment.

Respectfully Submitted,

**BRENNA BRID**
Attorney General of Iowa

**/s/ RYAN P. SHEAHAN**
**RYAN P. SHEAHAN**
Assistant Attorney General
Hoover Building, Second Floor
Des Moines, Iowa 50319
PHONE: (515) 281-6658
FAX: (515) 281-4209
E-MAIL: ryan.sheahan@ag.iowa.gov
ATTORNEY FOR DEFENDANT KOENIG

*Original filed electronically.*
*Copy electronically served on all parties of record.*

<table>
<tr><td colspan="2" align="center">**PROOF OF SERVICE**</td></tr>
<tr><td colspan="2">The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on July 7, 2026.</td></tr>
<tr><td>☐ U.S. Mail</td><td>☐ FAX</td></tr>
<tr><td>☐ Hand Delivery</td><td>☐ Overnight Courier</td></tr>
<tr><td>☐ Federal Express</td><td>☐ Other</td></tr>
<tr><td colspan="2">☒ ECF System Participant (Electronic Service)</td></tr>
<tr><td colspan="2">Signature: /s/Jodi R. Watson</td></tr>
</table>

19