**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **GAIL OSBORN, AND TIM MCCONNELL-SEABA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**KELSEY KOENIG, AND JEFFERSON COUNTY IOWA,**<br><br>**Respondents.** | **CASE NO. 4:25-cv-00183**<br><br>**PLAINTIFFS' COMBINED REPLY RE: THEIR MOTION FOR SUMMARY JUDGMENT, ECF No. 33** |

## TABLE OF CONTENTS


ARGUMENT ........ 1
I. Expectation of privacy ........ 1
II. Exigency ........ 4
III. Qualified immunity ........ 4
CONCLUSION ........ 6


## ARGUMENT

This brief responds to Defendants' respective resistances to Plaintiffs' Motion for Summary Judgment. Most of the arguments raised by Defendants Koenig, Moulding, and Jefferson County have been addressed by Plaintiffs in their own summary judgment brief and their resistance to Defendants' summary judgment motions. This reply brief will not repeat those arguments.

### I. Expectation of privacy

Koenig cites *United States v. Skoda*, 705 F.3d 834 (8th Cir. 2013) as authority for the proposition that Osborn and McConnell-Seaba did not have a legitimate expectation

of privacy. (ECF No. 45 at 5). *Skoda* is plainly inapplicable. The criminal defendant in *Skoda* had parked a vehicle outside a home that he did not own or live in; it was owned by the criminal defendant's father and was presently vacant. The Court explained, "defendants have no expectation of privacy in a parent's home *when they do not live there*." *Id.* at 837 (emphasis added). Since McConnell-Seaba and Osborn lived at the property, they had a reasonable expectation of privacy. Also notable, the criminal defendant in *Skoda* was not present and did not object to the search of the home.

Again, Koenig's argument that McConnell-Seaba did not have a reasonable expectation of privacy because he was a remainderman is incorrect. (ECF No. 45 at 6). McConnell-Seaba and Osborn did not need to be owners of the property to have a reasonable expectation of privacy. The simple fact that they lived there is what granted them a reasonable expectation of privacy. *United States v. Schroeder*, 129 F.3d 439, 442 (8th Cir. 1997). McConnell-Seaba's status as an owner of the property and a remainderman only reinforces that reasonable expectation of privacy.

Koenig and Moulding's "apparent authority" argument is another red herring. (ECF No. 45 at 7–9; ECF No. 46-1 at 21–23). Plaintiffs don't dispute that Gordon Seaba had apparent authority and common authority over the property. The problem for Defendants is that Gordon Seaba's apparent, common authority to consent could not override Osborn and McConnell-Seaba's contemporaneous objection. *Georgia v. Randolph*, 547 U.S. 103, 114 (2006).

Moulding claims he "did not even know who McConnell-Seaba was, and because of that Moulding did not possess any information that would indicate McConnell Seaba lived on Gordon Seaba's property." (ECF No. 46-1 at 10). The body camera video reveals

this is a blatant lie. After Moulding exited the main house, Deputy Miller told Moulding, "Tim's quite riled up. That's Gail's significant other." (Miller BC 2 at 8:25–:32). Moulding asked Washington County Deputy Ulin if both Osborn and McConnell-Seaba were both "down there" at the bottom of the driveway. (Ulin BC at 13:10–:15). Deputy Ulin confirmed that Osborn and McConnell-Seaba were "down there," to which Moulding responded, "Let's go clear this small house that we think that they're in, then, 'cause they're not gonna be in it." (Ulin BC at 13:09–:19). Koenig asked, "Who's both, her and her baby daddy?" (Ulin BC at 13:18–13:21). Moulding clarified, "her and Tim." (Ulin BC at 13:20–13:23).

Moulding's claims that he "had no information about where Osborn specifically resided" he "could not reasonably determine what the alleged tiny-home was from the outside" are also farcical in light of the video. (ECF No. 46-1 at 10). In addition to the facts cited above, Moulding admits that he said, "Let's get back to that shack before they get back there." (ECF No. 46-2 ¶ 144). He also admits he turned back to look as Koenig pointed to Osborn and McConnell-Seaba's home, in answer to the question, "which one do they live in?" (ECF No. 46-2 ¶ 146–147). And he admits that "the dwelling had domestic touches that indicated it was a home, including a screen door, porch light, string lights above the door, and decorative statue and metal chairs out front on a rock patio." (ECF No. 46-2 ¶ 197). No matter how many times he calls the dwelling a "shed," it does not change the fact that the building was obviously Osborn and McConnell-Seaba's home, and he knew it.

Defendant Moulding asserts that it is incorrect that "the only way to access Osborn and McConnell-Seaba's alleged curtilage is up the long driveway." (ECF No. 46-1 at 12). Defendant Moulding insists this is "blatantly false" because "there is an established path

in the hedge and the tree line to and from Gordon Seaba's house to their alleged curtilage." *Id.* But Defendant Moulding admits that "A person could reach [McConnell-Seaba and Osborn's] yard only by walking up their long driveway and past the main house." (ECF No. 46-2 ¶ 195). Plaintiffs acknowledge there is a path between Gordon Seaba's home and their dwelling, but this is immaterial. The point is that the only way to reach their dwelling *from the road* is to come up a long, private driveway. Osborn and McConnell-Seaba accordingly had a reasonable expectation of privacy in their dwelling and the curtilage of the property. Their curtilage is the entire property, not just some limited area only behind Gordon Seaba's house, as Moulding seems to suggest.

## II. Exigency

On another factual point, Moulding states in his brief that there were only "37 minutes in between when Koenig called Moulding to relay all the information she learned to when they arrived at Gordon Seaba's property," and that 37 minutes was insufficient time to get a warrant. (ECF No. 46-1 at 20). Moulding bases this 37-minute calculation on the assertion that he arrived at the property at 4:00pm. *Id.* The problem with the calculation is that Moulding actually arrived to the property shortly before 5:00pm. Both Moulding and Koenig have admitted this. (ECF No. 46-2 ¶ 86; ECF No. 45-1 ¶ 86). At minimum, Moulding had 1 hour and 37 minutes, plenty of time to seek a warrant (which of course would have been denied due to lack of probable cause).

## III. Qualified immunity

Defendant Koenig states, "at least one federal circuit has held that social workers do not violate clearly established law by exceeding the limited consent to search that the property owner gives them. *See, Brent v. Wayne County Dept. of Human Services*, 901 F.3d 656, 686 (6th Cir. 2018)." (ECF No.45 at 17). Reading *Brent* and the related,

unpublished case that actually decided the search issue, *Brent v. Wenk*, 555 F. App'x 519 (6th Cir. 2014), it turns out that the basis for that ruling is because, prior to 2012, the Sixth Circuit had not established that a social worker was subject to the Fourth Amendment's search restrictions. 555 F. App'x at 526; *but see Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 699 (6th Cir. 2013) ([T]here is an absence of pre–2002 case law specifically mentioning social workers, which under our binding precedent is insufficient to upset the presumption that all government searches and seizures are subject to the strictures of the Fourth Amendment.").

But here, in Iowa, we have *Minor v. State*, 819 N.W.2d 383, 398 (Iowa 2012), which establishes that social workers are constrained by the Constitution for their investigatory actions. We also have *Webster v. Westlake*, 41 F.4th 1004, 1011 (8th Cir. 2022), which recognizes the applicability of the Fourth Amendment—specifically the warrant requirement—in the context of child abuse reports. On top of this, there is *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005), which found the Fourth Amendment applied to a "child services worker;" and *Stanley v. Hutchinson*, 12 F.4th 834, 843 (8th Cir. 2021), which recognized the Fourth Amendment applies to "child abuse investigators." *See also Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1308 (8th Cir. 1997) (recognizing Due Process Clause constrains social workers). Fundamentally, even administrative searches require a warrant. *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 540 (1967). And as the Sixth Circuit has recognized, there is a "presumption that all government searches and seizures are subject to the strictures of the Fourth Amendment"—including searches by social workers. *Kovacic*, 724 F.3d at 699. Conspicuously absent from Defendant Koenig's brief is any

mention of the governing cases: *Webster v. Westlake*, 41 F.4th 1004 (8th Cir. 2022), *Fla. v. J.L.*, 529 U.S. 266, 269 (2000), *Georgia v. Randolph*, 547 U.S. 103, 115 (2006).

In sum, the governing law clearly establishes that Koenig is bound by the Fourth Amendment's warrant requirement. This includes the exigency limitations and the rule that officials must obey a present and objecting co-tenant. Defendant Koenig did not abide by those clearly-established rules and thus is not entitled to summary judgment.

## CONCLUSION

**WHEREFORE**, Plaintiffs Gail Osborn and Timothy McConnell-Seaba respectfully request the Court deny Defendants Kelsey Koenig and Jefferson County, Iowa's Motion for Summary Judgment, and request the Court grant Plaintiffs' Motion for Summary Judgment.

**PARRISH KRUIDENIER, L.L.P.**

By: /s/ Gina Messamer
Gina Messamer AT0011823
2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 284-5737
Facsimile: (515) 284-1704
Email: gmessamer@parrishlaw.com
**ATTORNEY FOR PLAINTIFFS**

By: /s/ Edward Harvey
Edward G. Harvey AT0003350
1600 Wonder Way
Fairfield IA, 52556
Telephone: (641) 919-8696
Email: edwardgharvey98@yahoo.com
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2026, I electronically filed the foregoing with the Clerk of Court using the ECF system and a true copy of the foregoing was served electronically on the attorneys of record.

By: __/s/ Gina Messamer__________